# EXHIBIT A

1

**COMMONWEALTH OF MASSACHUSETTS**

| | |
|---|---|
| **MIDDLESEX, SS** | **MIDDLESEX SUPERIOR COURT**<br>**C.A. NO.: New Filing** 26-2348 |
| **GENESIS MEJIA,**<br>**Plaintiff,**<br><br>**VS.**<br><br>**PRESIDENT AND FELLOWS OF HARVARD COLLEGE and LAUREN FERRELL,**<br>**Defendants.** | 9/2/26 **RECEIVED** |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Genesis Mejia (the "Plaintiff" or "Mejia") brings this action for race and gender discrimination, hostile work environment, retaliation, loss of wages, and intentional infliction of emotional distress against defendants President and Fellows of Harvard College ("Harvard") and Lauren Ferrell ("Ferrell" and together with Harvard the "Defendants") as follows:

## I. INTRODUCTION

The facts of this case show how Defendants repeatedly engaged in a pattern of behavior discriminating against Mejia on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and Mass. Gen. Laws ch. 151B §§ 4(1) and 4(1E)(a)(iii) and later retaliated against her in violation of Mass. Gen. Laws ch. 151B § 4(4). As a direct result of Defendants' misconduct, Mejia has suffered a variety of damages, including but not limited to lost wages, substantial emotional distress, and harm to her reputation and profession. Mejia seeks these damages as well as punitive damages, costs, interest, and her attorneys' fees.

## II. PARTIES

1. Plaintiff Genesis Mejia is an individual with an address located at 53 Rockwood Street, Holbrook, Norfolk County, Massachusetts.

2. Defendant Lauren Ferrell is an individual with an address of 2355 Westwood Blvd, Ste 607, Los Angeles, California.

3. Defendant President and Fellows of Harvard College, at all relevant times herein is/was an independent body politic, located at 1341 Massachusetts Avenue, Cambridge, Middlesex County, Massachusetts.

## III. JURISDICTION AND VENUE

4. The Superior Court has subject matter jurisdiction over this action under Mass. Gen. Laws ch. 151B, §§ 4(1E)(iii), and 4(4). This Court also has jurisdiction over Defendants pursuant to Mass. Gen. Laws ch. 223A, § 3.

5. Pursuant to Mass. Gen. Laws ch. 223, §§ 1 and 8, venue is proper because Harvard has a usual place of business in Middlesex County. Additionally, both Mejia and Ferrell worked for Harvard, in Middlesex County during the period relevant to this case.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Mejia has satisfied all conditions precedent to the commencement of this lawsuit:

   a. Mejia filed a charge of employment discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") on September 19, 2023, within 300 days of the commission of the unlawful employment practice alleged herein.

   b. The MCAD investigated her claim.

   c. The MCAD's investigation remains ongoing, and the Defendants have failed to

participate in said investigation.

## V. FACTS

7. In or about 2013, Harvard hired Mejia—a Hispanic single mother of three children—in the School of Public Health.

8. Between 2013 and September 19, 2022, Mejia never had a single low-performance review in relation to her employment duties.

9. On or around June 2021, Ferrell was assigned to lead the Faculty of Arts and Sciences Research Administrative Services ("FAS RAS"). During which time, there were twenty-six (26) other staff members.[1]

10. In just under two and a half years, the number of staffers had fallen to only ten (10). Many of the employees who resigned from FAS RAS during the two-and-a-half-year period cited Ferrell's behavior as a reason for their departure.[2]

11. On or around October 2021, just four months after Ferrell took her position, FAS RAS Human Resources received a misconduct complaint against Ferrell which stated they were "terrified to come to work, feel completely isolated from my coworkers. Harvard used to feel like 'home,' but within the last two months or so, I have been bullied, gaslighted, excluded and manipulated by Lauren Ferrell." FAS RAS Human Resources convinced the complainant not to pursue an investigation.[3]

12. On or around July 2022, another complaint was filed but with EthicsPoint,

[1] 'Bullied Into Leaving': Harvard Research Admin File Workplace Complaints, Leave Department En Masse | News | The Harvard Crimson; FAS Research Dean Ferrell Steps Down Following Bullying Allegations | News | The Harvard Crimson

[2] 'Bullied Into Leaving': Harvard Research Admin File Workplace Complaints, Leave Department En Masse | News | The Harvard Crimson; FAS Research Dean Ferrell Steps Down Following Bullying Allegations | News | The Harvard Crimson

[3] FAS Research Dean Ferrell Steps Down Following Bullying Allegations | News | The Harvard Crimson; 'Bullied Into Leaving': Harvard Research Admin File Workplace Complaints, Leave Department En Masse | News | The Harvard Crimson

Harvard's anonymous internal reporting hotline. The complaint claimed Ferrell yelled at a third-party hire during a virtual work meeting. Further the complaint stated, "Ms. Ferrell's erratic and unprofessional behavior continued to escalate culminating in two zoom calls during which she yelled, stood up and pointed, waved hands, called my work terrible and unusable, the overall experience 'disappointing' as well as using condescending, derogatory language and body language."[4]

13. On September 19, 2022, Mejia was moved to the Faculty of Arts and Sciences as a Research Compliance Officer ("RCO").

14. Mejias direct supervisor as a RCO was Ferrell, who was the Associate Dean for Research Administration Services and led the FAS RAS at all times material hereto.

15. On or around September 2022, a state complaint was filed with the MCAD against Ferrell by a former staff member. The complaint claimed that Ferrell created a "hostile workplace environment," including multiple "instances of harassment and humiliation." The complaint alleges that Ferrell's actions caused undue stress and emotional harm, that during individual meetings Ferrell made misleading and unsubstantiated claims about the staffer and their work performance, and that Ferrell told the former employee twice in a demeaning and negative tone that she had heard they were difficult. Further, the complaint states that despite repeated staff attempts to raise concerns, senior leaders at FAS RAS ignored Title IX staff complaints filed against Ferrell; that there is a pattern at FAS RAS of ignoring Title IX staff complaints filed against Ferrell; and that staff was repeatedly told by Ferrell's supervisor, Dean Scott Jordan ("Jordan"), that the staff needed to support Ferrell.[5]

---

[4] 'Bullied Into Leaving': Harvard Research Admin File Workplace Complaints, Leave Department En Masse | News | The Harvard Crimson

[5] 'Bullied Into Leaving': Harvard Research Admin File Workplace Complaints, Leave Department En Masse | News | The Harvard Crimson

16. During this time, Jordan received multiple email correspondences detailing Ferrell's behavior and seeking resources for support, with Harvard President Claudine Gay, then-President Lawrence S. Bacow, and Harvard Provost Alan M. Garber also copied on the emails.[6]

17. Within the first two months of her new role Mejia began to note that the FAS RAS environment was antagonistic. Ferrell had even warned Mejia of the turmoil saying that everyone in the department was against her and that she was trying to reorganize the department.

18. On or around November 2022, Ferrell began to treat Mejia in an aggressive and condescending manner.

19. While in a meeting about pilot software and discussing a new system to be rolled out (Jagger (B2P)) with Farrell and another Harvard employee, Stacy Springs ("Springs"), who was a Research Integrity Officer, Mejia brought up concerns due to the lack of guidance with the project. In response to the concerns, Ferrell began to give Mejia directions in real-time, for which Mejia had to explain that she had already tried what Ferrell was suggesting. Mejia then suggested that they should reach out to the person in charge of the roll out to provide them with adequate assistance. At one point, Springs turned off her camera to retrieve a delivery. While Springs had her camera turned off, Ferrell began yelling at and reprimanding Mejia, telling her that she does not see herself (indicating her behavior) and that Mejia needs to learn to be quiet and respectful.

20. The following day, Farrell and Mejia had an in-person meeting where Ferrell further reprimanded Mejia. Ferrell told Mejia that she needed to "catch herself" and "learn to speak." Ferrell further told Mejia that she was acting like a teenager needing to get her point across. Mejia responded by telling Ferrell that she was in no way trying to be disrespectful.

21. Shortly thereafter, Springs informed Mejia that during the prior Jagger (B2P)

[6] 'Bullied Into Leaving': Harvard Research Admin File Workplace Complaints, Leave Department En Masse | News | The Harvard Crimson

software meeting when Mejia had asked questions, Ferrell texted Springs to pretend to have a delivery and turn off her camera. Springs in fact did not turn off her camera and witnessed the interaction between Ferrel and Mejia. Springs told Mejia that she was appalled by how Ferrell spoke to Mejia.

22. Ferrell then began isolating Springs and Mejia from each other. Ferrell began to claim that Springs had spoken poorly about Mejia. Ferrell began fabricating stories claiming Springs had told Ferrell that she disliked the fact that Mejia had "two baby daddies." However, Ferrell was the only employee who knew Mejia's children had two different fathers.

23. Ferrell was consumed by the fact that Mejia had three children and was unwed, fixating on the stereotype of an unwed Hispanic mother with multiple children. For example, at 8:30PM on a Friday, Ferrell texted Mejia stating that she needed to "touch base" with Mejia. Further, Ferrell texted, "I'm up now but it may not work with the kids" and "[i]t is most important that this last years work not be lost to fumbles and feelings." *See* Exhibit A.

24. Ferrell continued to make comments regarding Mejia's children and continued taking issue with Mejia's alleged behavior.

25. On March 21, 2023, Mejia began medical leave of absence that was scheduled to end May 31, 2023, however, was extended until July 20, 2023.

26. In or about May 2023, Mejia started occupational therapy due to her work environment.

27. During Mejia's medical leave, Ferrell attempted to contact Mejia. When Mejia did not respond to Ferrell, Ferrell told another worker at FAS RAS, Roanne Bosch ("Bosch"), that Mejia needed to "learn responsibility" and "teach her kids what responsibility is" and that Ferrell would fire Mejia for job abandonment.

28. In or around May 2023, fourteen (14) other members of FAS RAS and Mejia went to Harvard's Title IX office to file a complaint against Ferrell. Each of the fourteen (14) other co-workers filed separate complaints against Ferrell. Mejia filed a separate complaint against Ferrell. Mejia had also filed multiple complaints to human resources.

29. At least three additional complaints were filed with Massachusetts state agencies, and two more were filed through EthicsPoint.[7]

30. On May 11, 2023, one of the complainants, Bosch reached out to Seth Avakian ("Avakian") (Program Director for Nondiscrimination and Professional Conduct) to report that she and her colleagues have been experiencing concerning behavior from Ferrell and those supporting her. *See* Exhibit B.

31. On May 18, 2023, there was an initial meeting with Avakian, Bosch, and Mejia's colleagues to discuss Ferrell's behavior. Following the meeting, Bosch reached out to Avakian again stating "[w]e would like to go to HR, but some feel unsafe going that route without a little more information . . . ." *See* Exhibit B.

32. On June 7, 2023, Lance Houston ("Houston") (a Program Manager for Professional Conduct from FAR RAS Human Recoursces) began an internal investigation into Ferrell and sent an email to employees who had made complaints about her behavior. Five months later, Houston departed his temporary position at Harvard and FAS RAS staff were left in the dark—unable to reach him and left without any updates on the status of the investigation.

33. On June 8, 2023, one of the employees who had complained about Ferrell's behavior, Bosch, reached out to Houston. She explained that some of the complainants are "legitimately fearful of Lauren's retaliation" and that some "feel that this is being handed off to

[7] FAS Research Dean Ferrell Steps Down Following Bullying Allegations | News | The Harvard Crimson

you to suppress our concerns." Further Bosch explained that "[t]hese issues have been reported multiple times to FAS leadership, HR, and Title IX over the past two years and we saw nothing done to address them." In addition, Bosch claimed that Harvard has fallen short on its promise of confidentiality with some of the meetings to report Ferrell's conduct, as Ferrell has often shared others' personal information she says comes from human resources as a tool for manipulation. *See* Exhibit C.

34. As part of Bosch's email to Housten, she also explained that she included Avakian on the email chain because the group of complainants would like to request a group meeting that includes Avakian because "our group trusts him, and [she] think[s] hearing from him as this gets handed off to HR would go a long way to easing some fears about individual meetings with HR." Bosch further explained that staff has been publicly belittled, targeted, and harassed and she believes that this approach would create a path for staff to feel safe speaking openly and honestly about their individual experiences. *See* Exhibit C.

35. On June 8, 2023, Tiffany Jadotte ("Jadotte") (Associate Dean for Human Resources and Faculty of FAS) declined Bosch's request to include Avakian in the meetings. Jadotte stated "[a]lthough we appreciate your suggestion to include Seth in this process, this is an effort that is spearheaded by FAS HR and will be carried out as individual meetings with each RAS staff member" and that Bosch "certainly have the ability to opt out of scheduling an individual meeting; however, at this juncture, the process of individual staff interviews will take place this week and next." *See* Exhibit C.

36. On June 9, 2023, Bosch reached out to Avakian separately from the chain created by Houston. She explained that the "folks on my team are very anxious about proceeding with individual meetings with HR." Further, she is "disappointed that rather than offering some

assurance of safety we were given the option not to participate, and others are very worried about retaliation, or about their words being used in ways that are otherwise damaging to them or their professional reputation." *See* Exhibit C.

37. On July 7, 2023, the complainant employees reached out to Houston for an update regarding the investigation. Houston explained that at this time there was no information to share but that he or Andrea Kelton-Harris ("Kelton-Harris") (Director for Diversity, Equity, Inclusion and Belonging and FAS Human Resources) were expecting to be able to share information with the team sometime next week. *See* Exhibit D.

38. On July 21, 2023, the complainant employees reached out to both Houston and Kelton-Harris explaining that RAS is concerned that "we haven't had any communication or support on this matter." RAS employees are "frustrated and struggling." *See* Exhibit D.

39. Kelton-Harris provided the following response to emails they had received that week from RAS staff:

- As indicated in the communication sent on July 7, there is no information to share with you at this time.
- If there are concerns about the day-to-day operations . . . you should speak with Lauren Ferrell as she continues to be the leader of RAS.
- We disagree with the perspective that RAS staff are not receiving any support from FAS HR or others.
- It is not helpful to anyone or this process for staff to speculate or try to piece together information amongst yourselves regarding the investigation. Further, any determinations that may be made in this way are assumptions at best.
- Please know that everyone involved in this process deserves to be treated respectfully and fairly and that includes not judging or making assumptions about things for which you have no direct knowledge or involvement.

*See* Exhibit D.

40. After receiving such a shocking email, FAS RAS complainant staff felt "especially defeated." *See* Exhibit D.

41. On July 26, 2023, Mejia returned to work on a full-time basis. Upon her return Ferrell required Mejia to meet with her three to four times per week. Ferrell had created her own process to institute one-on-one meetings between herself and Mejia, to go over work progress every thirty (30), sixty (60), and ninety (90) days. Ferrell called her new system a "back to work process" and told Mejia that she was Ferrell's "guinea pig." When Mejia sent this information to human resources, while responsive, did nothing to help Mejia except help Mejia draft an email to Ferrell addressing her concerns since the "back to work process" was essentially a Performance Improving Plan made up by Ferrell to target Mejia. *See* Exhibit E.

42. On August 23, 2023, Mejia had a thirty (30) day meeting with Farrell, for which Mejia took extensive notes. During the meeting, Ferrell continued to degrade Mejia by interpreting her questions and right to go to human resources as slights against Ferrell and a failure to perform her duties. Continuing her practice of inappropriate comments about Mejia's home life, Ferrell stated that Mejia isn't doing her job because she "has 5 or 6 kids" and "Harvard isn't paying us to raise our kids." However, Ferrell gave no examples of how Mejia was low on her job performance, nor did she identify any areas for improvement. *See* Exhibit F.

43. On or around September 2023, Mejia attempted to follow up with Houston and explained how she felt she was being retaliated against by Ferrell. Mejia explained further that Ferrell was creating new procedures, giving her unrealistic tasks, and appeared to have a vendetta against her for being a Hispanic mother.

44. The following week, Mejia emailed Houston again but got a bounce back. No update was given regarding the investigation, and no update was given to the group of staff who made complaints.

45. Eventually, Etaine Smith ("Smith") appeared to have taken over the investigation,

and she stated she spoke to Houston but that she had some concerns about Mejia's complaints. Smith wanted Mejia to summarize everything she had experienced in an email to human resources. Smith then stated that she was required to share this email with Ferrell and the dean of human resources. *See* Exhibit G.

46. On September 12, 2023, Mejia explained to Smith that she would like to express her concerns about being treated differently than other staff returning from leave. Further, Mejia said that she felt this was discriminatory. *See* Exhibit G.

47. After Mejia submitted her experience, Harvard did nothing further. In fact, Smith, while admitting that Havard had policies to address its prohibition on retaliatory actions, stated "it is impossible to guarantee anything" and that Harvard would only respond to "confirmed acts of retaliation." *See* Exhibit G.

48. On September 19, 2023, with Harvard failing to provide any assistant and no other options, Mejia filed her Charge of Discrimination with the MCAD. *See* Exhibit H.

49. Mejia was required to meet one-on-one with Ferrell again. During the meeting, Ferrell discussed Mejia's emails to human resources that were provided to her saying "your emails are very thorough" and "you put a lot of effort into your emails." Further, Ferrell accused Mejia of using AI to write these emails. Because of Ferrell's continued harassment and aggressive behavior, Mejia felt forced to resign.

50. On October 2, 2023, Mejia sent in her resignation letter. *See* Exhibit I.

51. The following day, Mejia worked from home, as she was permitted to do, and attempted to reach out again to human resources, including Smith's direct boss Dean Jordan. However, Mejia received no response.

## CAUSES OF ACTION

**COUNT ONE**
**DISPARATE TREATMENT BASED ON RACE**
**Violation of Mass. Gen. Laws ch. 151B, § 4(1)**
(Against All Defendants)

52. Plaintiff repeats and realleges all of her allegations in the previous paragraphs of the Complaint, as if fully restated herein.

53. Mejia is a member of a protected racial group, specifically she is Hispanic.

54. Mejia was employed by Harvard from 2013 to approximately the end of October 2023 when she resigned.

55. At all times relevant, Mejia was qualified for her position and performed her job satisfactorily.

56. Prior to Ferrell's employment, Mejia had never received one negative performance review.

57. Beginning on or about November 2022, Mejia was subjected to discriminatory treatment from Ferrell because she is a Hispanic, single mother, including but not limited to: frequent comments made by Ferrell regarding Mejai's ethnicity and family responsibilities; unprofessional outbursts by Ferrell; Ferrell's use of condescending, derogatory language and body language toward Mejia; continued harassment and humiliation by Ferrell toward Mejia; and being singled out by Ferrell when coming back from medical leave.

58. Similarly situated employees of a different race were treated more fairly including but not limited to: not being told they needed to be mindful for the upcoming months, prioritize being punctual, and focus in meetings; not being told they need readjustment now that school is starting; not being told to dedicate themselves to actual one-offs to be one-offs, not become the norm; not being told they need to be fully engaged while working remotely; not being told that the

supervisors wants them to be intentional; not being told to plan accordingly; not being placed on any sort of performance plan when taking and returning from their medical leave; not being told to not use work time to parent; not being told to prioritize childcare; not being told that Harvard is not paying them to raise their kids; not being told that a supervisor didn't understand where their energy is coming from; not being accused of making negative assumptions; not being told to take out that negativity; not being told that they have a lot going on or that they have five or six kids so they must not be feeling good; and not being told to give pause and take a break and think about how they are showing up.

59. At all times relevant, while Ferrell was acting with discriminatory animus toward Mejia, Ferrell was employed by Harvard.

60. Ferrell acted outrageously and egregiously against both Massachusetts anti-discrimination laws and Harvard's own anti-discrimination policy.

61. Mejia reported and complained about the discriminatory conduct on: March 2023; May 2023; June 2023; July 2023; September 2023; and October 2023.

62. Harvard failed to take adequate corrective action.

63. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and M.G.L. c. 151B § 4.

64. As a result of the discrimination, Mejia has in the past, and will in the future, suffer damages, including but not limited to, mental and emotional distress, including anxiety for the future and her ability to support herself, humiliation, embarrassment, loss of earning capacity, and reputation and standing in the community, including the right to pursue gainful occupational choice.

65. The actions of Defendants toward Mejia were extreme and outrageous, driven by evil motive of the Defendants and their reckless indifference to Mejia's rights. Based on the egregiousness of the Defendants' actions, Mejia is entitled to an award of punitive damages.

**COUNT TWO**
**DISPARATE TREATMENT BASED ON GENDER**
**Violation of Mass. Gen. Laws ch. 151B, § 4(1)**
(Against All Defendants)

66. Plaintiff repeats and realleges all of her allegations in the previous paragraphs of the Complaint, as if fully restated herein.

67. Mejia is a member of a protected gender class, specifically she is a female, single mother.

68. Mejia was employed by Harvard from 2013 to approximately the end of October 2023 when she resigned.

69. At all times relevant, Mejia was qualified for her position and performed her job satisfactorily.

70. Prior to Ferrell's employment, Mejia had never received one negative performance review.

71. Beginning on or about November 2022, Mejia was subjected to discriminatory treatment from Ferrell because she is a Hispanic, single mother, including but not limited to: frequent comments made by Ferrell regarding Mejai's ethnicity and family responsibilities; unprofessional outbursts by Ferrell; Ferrell's use of condescending, derogatory language and body language toward Mejia; continued harassment and humiliation by Ferrell toward Mejia, specifically regarding her status as a mother; and being singled out by Ferrell when coming back from medical leave.

72. Similarly situated employees of a different gender were treated more fairly

including but not limited to: not being told they needed to be mindful for the upcoming months, prioritize being punctual, and focus in meetings; not being told they need readjustment now that school is starting; not being told to dedicate themselves to actual one-offs to be one-offs, not become the norm; not being told they need to be fully engaged while working remotely; not being told that the supervisors wants them to be intentional; not being told to plan accordingly; not being placed on any sort of performance plan when taking and returning from their medical leave; not being told to not use work time to parent; not being told to prioritize childcare; not being told that Harvard is not paying them to raise their kids; not being told that a supervisor didn't understand where their energy is coming from; not being accused of making negative assumptions; not being told to take out that negativity; not being told that they have a lot going on or that they have five or six kids so they must not be feeling good; and not being told to give pause and take a break and think about how they are showing up.

73. Mejia reported and complained about the discriminatory conduct on: March 2023; May 2023; June 2023; July 2023; September 2023; and October 2023.

74. Harvard University failed to take adequate corrective action.

75. As a result of the discrimination, Mejia suffered damages.

76. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and M.G.L. c. 151B § 4.

77. At all times relevant, while Ferrell was acting with discriminatory animus toward Mejia, Ferrell was employed by Harvard.

78. Ferrell acted outrageously and egregiously against both Massachusetts anti-discrimination laws and Harvard's own anti-discrimination policy.

79. As a result of the discrimination, Mejia has in the past, and will in the future,

suffer damages, including but not limited to, mental and emotional distress, including anxiety for the future and her ability to support herself, humiliation, embarrassment, loss of earning capacity, and reputation and standing in the community, including the right to pursue gainful occupational choice.

80. The actions of Defendants toward Mejia were extreme and outrageous, driven by evil motive of the Defendants and their reckless indifference to Mejia's rights. Based on the egregiousness of the Defendants' actions, Mejia is entitled to an award of punitive damages.

**COUNT THREE**
**HOSTILE WORK ENVIRONMENT BASED ON RACE and GENDER**
**Violation of Mass. Gen. Laws ch. 151B, § 4(1)**
(Against All Defendants)

81. Plaintiff repeats and realleges all of her allegations in the previous paragraphs of the Complaint, as if fully restated herein.

82. The acts described in the foregoing paragraphs show that Mejia was subjected to unwelcome conduct based upon her race, material status, and status as a mother.

83. The conduct by Defendants was severe and pervasive enough to alter the terms and conditions of employment.

84. Defendants knew of the harassment.

85. Defendants failed to take prompt and effective remedial action.

86. As a result of the discrimination, Mejia has in the past, and will in the future, suffer damages, including but not limited to, mental and emotional distress, including anxiety for the future and her ability to support herself, humiliation, embarrassment, loss of earning capacity, and reputation and standing in the community, including the right to pursue gainful occupational choices.

87. The actions of the Defendants toward Mejia were extreme and outrageous, driven by evil motive of the Defendants and their reckless indifference to Mejia's rights. Based on egregiousness of the Defendants' actions, Mejia is entitled to an award of punitive damages.

**COUNT FOUR**
**RETALIATION**
**Violation of Mass. Gen. Laws ch. 151B, § 4(4)**
(Against All Defendants)

88. Plaintiff repeats and realleges all of her allegations in the previous paragraphs of the Complaint, as if fully restated herein.

89. Mejia engaged in protected activity by reporting and opposing racial and gender discrimination.

90. Defendants knew that Mejia had engaged in protected activity.

91. Defendants thereafter subjected Mejia to materially adverse actions such as but not limited to: Mejia's supervisor beginning to closely monitor her work and criticizing issues that had never previously been identified as concerns; Mejia was required to provide explanations for routine activities that other employees were not required to justify; Mejia's supervisor trying to isolate Mejia from her co-workers; Mejia's supervisor spreading rumors about her; and Mejia's supervisor making racial and derogatory comments about Mejia.

92. There is a causal connection between Mejia's protected activity and Defendants adverse employment actions.

93. Defendants conduct violated Title VII and M.G.L. c. 151B § 4.

94. As a result of the discrimination, Mejia has in the past, and will in the future, suffer damages, including but not limited to, mental and emotional distress, including anxiety for the future and her ability to support herself, humiliation, embarrassment, loss of earning capacity, and

reputation and standing in the community, including the right to pursue gainful occupational choice.

95. The actions of Defendants toward Mejia were extreme and outrageous, driven by evil motive of the Defendants and their reckless indifference to Mejia's rights. Based on the egregiousness of the Defendants' actions, Mejia is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

A. Judgment in favor of the Plaintiff Genesis Mejia on all counts alleged in this Complaint;

B. Lost wages, compensatory damages, emotional distress damages, and reputational damages, in an amount to be determined at trial, including punitive damages against all Defendants;

C. Costs, reasonable attorneys' fees, and interest; and;

D. Any such further relief as the Court deems just.

**JURY TRIAL DEMAND**

The Plaintiff claims a trial by jury on all issues so triable.

**[SIGNATURE PAGE TO FOLLOW]**

**CERTIFICATION**

I, Genesis Mejia, hereby swear under the pains and penalties of perjury that I have read the Verified Complaint, that the facts stated therein are true and that no material facts have been omitted therefrom.

Signed this 08 day of 21, 2026.

Genesis Mejia
Genesis Mejia (Aug 21, 2026 17:29:08 EDT)
Genesis Mejia

Plaintiff,
GENESIS MEJIA,
By her attorney,

Leah Duffield

Leah S. Duffield, BBO #707125
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
P: (617) 422-0200
E: lsd@bostonbusinesslaw.com

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

Exhibit A

1:20 18m

IMG_2491.PNG Done

Lauren

Dec 2, 2022 at 8:39 PM

Hi! I have had a call w Stacey about this past week and today, and checked in w Christopher and need to touch base with you.

Let me know if you have time to connect this weekend.

I'm up now but it may not work with the kids and I understand. I'll be available all weekend

Hi lauren, I'm at my mothers helping her with some things around the house, since she had surgery she can't bend down.

I don't think I will have time this weekend. I have a pretty busy weekend with the kids and a project due for school. Im happy to connect first thing Monday morning.

Sounds good. I have 9-11 open.

It will be important to discuss so you are aware where we are and where my head is in the event we need to make changes until things stabilize.

It is most important that this last years work not be lost to fumbles and feelings.

So I'll add time for us Monday morning

Exhibit B

**Subject:** Re: Time to talk?
**Date:** Wednesday, May 31, 2023 at 3:19:29 PM Eastern Daylight Time
**From:** Bosch, Roanne
**To:** Avakian, Seth
**Attachments:** image001.png

Hello Seth,

Thank you again for your time yesterday and for the impromptu therapy session. I think you can probably submit a claim to Blue Cross Blue Shield for the hour! 😝 Each time I think I have reached the end of my feelings about it, there are just more there... Anyway, two things:

I just connected with Nuala and we agreed that if you are looking for more specific examples of the name-dropping we discussed, you should connect with Adrianna Costanza (acostanza@fas.harvard.edu). She is Lauren's executive assistant.

I also just caught up with one of the two staff members who chose not to come to our meeting with you. He was concerned by things that came up at his annual evaluation last week, and said he is more than ready to talk with you and/or HR now. I told him I'd let you know, but that I wasn't sure to what extent you were connecting with folks one-on-one. He is Jimmy Matejek-Morris (jmatejek@fas.harvard.edu). Let me know if I can convey any message to him, too.

Many, many, many thanks,
Roanne

---

**From:** Avakian, Seth <avakian@fas.harvard.edu>
**Date:** Tuesday, May 30, 2023 at 1:34 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Subject:** RE: Time to talk?

Hi Roanne,
Great and thank you!
Sending you an invite for today at 2:30 in a second...
Talk to you soon!
Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Tuesday, May 30, 2023 1:31 PM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Time to talk?

Thanks for your message, Seth! I can meet via Zoom today at 2 or 2:30, or anytime tomorrow

afternoon. Let me know what is best for you.

All my best,
Roanne

---

**From:** Avakian, Seth <avakian@fas.harvard.edu>
**Date:** Tuesday, May 30, 2023 at 12:01 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Subject:** RE: Time to talk?

Dear Roanne,

I apologize that I'm just replying to your email now. Last week was overly- busy with Commencement-related responsibilities.
Do you have any time to talk later today or tomorrow? I'm free today from 1-5pm and on Wednesday I'm free 1-5pm.
We could meet in my office, somewhere else on-campus, on Zoom, or on the phone.
Please let me know what works for you.

Thank you!

Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Thursday, May 25, 2023 9:59 AM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Time to talk?

Hi Seth,

Thank you again for your time last Thursday. We brought a lot to you—more than I think we even knew individually. We are wondering if you have thoughts about our next steps. We would like to go to HR, but some feel unsafe going that route without a little more information about unknown agendas or alliances. I feel ridiculous even writing that, but here we are. I look forward to your advice.

Many, many thanks,
Roanne

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Date:** Monday, May 15, 2023 at 12:53 PM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Time to talk?

Excellent! Thank you. I look forward to seeing you Thursday!

---

**From:** Avakian, Seth <avakian@fas.harvard.edu>
**Date:** Monday, May 15, 2023 at 12:08 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Subject:** RE: Time to talk?

Hi Roanne,
I reserved the Library Conference Room (313A) - https://gsas.harvard.edu/student-center/explore-lehman-hall/third-floor
See you and your colleagues on Thursday at noon!
Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Monday, May 15, 2023 9:03 AM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Time to talk?

Hi Seth. That would work much better—thank you! I appreciate it!

Best,
Roanne

Get Outlook for iOS

---

**From:** Avakian, Seth <avakian@fas.harvard.edu>
**Sent:** Friday, May 12, 2023 5:19:24 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Subject:** RE: Time to talk?

Hi Roanne,

If you need me to find a space outside of 1414, please let me know! I could try the GSAS student center if that works for everyone.

Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Friday, May 12, 2023 5:12 PM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Time to talk?

Thanks so much, Seth!

I think an hour will at least be a great start. I am hesitant for us to meet in the RAS spaces at 1414, but I will check next week for a room that could work on a different floor. I'll get back to you about

location, but otherwise we'll plan for noon on the 18th.

Many, many thanks, and I look forward to seeing you!

All my best,
Roanne

---

**From:** Avakian, Seth <avakian@fas.harvard.edu>
**Date:** Friday, May 12, 2023 at 12:53 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Subject:** RE: Time to talk?

Hi Roanne,

I'm doing well and I hope you are too !
I'm happy to find time to talk.
Would about an hour be enough time for the conversation? I could come to 1414 right after my 11am meeting, but would need to get back to the GSAS Student Center by 1pm.

Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Thursday, May 11, 2023 2:37 PM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Time to talk?

Hi Seth,

I hope this finds you well!

I am coming to you in your professional conduct role: my colleagues and I have been experiencing some behavior of concern, and we are hoping we could talk with you about this and work together on next steps. If it is possible for you, we would like to meet in person. Hybrid schedules might not allow this, but we are on campus Tuesdays and Thursdays for the next two weeks and could meet next Thursday the 18th between 11 and 2—might you have any time in that window? Otherwise, we can look to Tuesday the 23rd or schedule a Zoom.

I so appreciate your time and attention, and I look forward to connecting soon.

All my best,
Roanne

**Roanne Bosch** (she/her/hers)
**Communications and Outreach Coordinator**
Harvard University | Faculty of Arts & Sciences – Research Administration Services
1414 Massachusetts Ave, 4th Floor, Cambridge, MA 02138
**E:** roannebosch@fas.harvard.edu | **W:** https://research.fas.harvard.edu/

HARVARD
Faculty of Arts and Sciences
RESEARCH ADMINISTRATION SERVICES

Exhibit C

**Harvard University**

1414 Massachusetts Avenue (5th Floor)

Cambridge, MA 02138

**Friday, October 27, 2023 at 11:15:09 Eastern Daylight Time**

---

**Subject:** FW: Staff Interviews
**Date:** Friday, June 9, 2023 at 3:35:13 PM Eastern Daylight Time
**From:** Bosch, Roanne
**To:** Avakian, Seth
**Attachments:** image002.png, image003.png

Hi Seth,

Happy Friday, finally! I hope this finds you well.

I wanted to follow up with you about this email because folks on my team are very anxious about proceeding with individual meetings with HR. I am disappointed that rather than offering some assurance of safety we were given the option to not participate, and others are very worried about retaliation, or about their words being used in ways that are otherwise damaging to them or their professional reputations. They asked me to ask you your opinion: since we have met with the Title IX office, does that protect us from retaliation for participating in any investigations related to their claims? Do you think we can proceed with some confidence in the process?

I am not sure how much reassurance you are able to give, but I really value your perspective on this.

Many, many thanks,
Roanne

---

**From:** Jadotte, Tiffany <tiffanyjadotte@fas.harvard.edu>
**Date:** Thursday, June 8, 2023 at 12:16 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>, Houston, Lance <lance_houston@fas.harvard.edu>
**Cc:** Smith, Etaine N. <etaine_smith@harvard.edu>
**Subject:** RE: Staff Interviews

Hello Roanne,

Thank you for your email.

I have moved Seth Avakian to the Bcc field in my response.

Although we appreciate your suggestion to include Seth in this process, this is an effort that is spearheaded by FAS HR and will be carried out as individual meetings with each RAS staff

member of which at the conclusion a summation of the interviews (without identifying "who said what"), will be provided to Claudine and Scott.

You certainly have the ability to opt out of scheduling an individual meeting; however, at this juncture, the process of individual staff interviews will take place this week and next.

Thank you and please let me know if you have further questions or concerns.

Best, Tiffany

Tiffany C. Jadotte, Ed.D., MBA (Pronouns: she/her/hers) I Associate Dean for Human Resources I Faculty of Arts & SciencesI Harvard University I1414 Massachusetts Avenue, 5th Floor, Cambridge, MA 02138 Ioffice tel. 617.495.1333 I mobile. 857. 214.1290 I email. tiffanyjadotte@fas.harvard.edu

*Meeting Scheduling*: To schedule a meeting, please email **Tracy Collins**

FAS HUMAN RESOURCES
www.hr.fas.harvard.edu

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Thursday, June 8, 2023 12:10 PM
**To:** Houston, Lance <lance_houston@fas.harvard.edu>
**Cc:** Jadotte, Tiffany <tiffanyjadotte@fas.harvard.edu>; Smith, Etaine N. <etaine_smith@harvard.edu>; Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Staff Interviews

Thank you so much, Lance. I am glad to meet you and eager to move this forward.

We are grateful that Scott and Claudine have been made aware of the toxic culture we have experienced in RAS for the last two years and are extremely relieved that action is being taken to
address it. I was able to check in with my colleagues after we got your email yesterday, and I feel a need to address just how reluctant some in RAS are to meet individually with HR. They are legitimately fearful of Lauren's retaliation. Some feel that this is being handed off to you to suppress our concerns. These issues have been reported multiple times to FAS leadership, HR, and Title IX over the past two years and we saw nothing done to address them.

Their trust has been eroded both from this apparent lack of action and from what seems like a lack of confidentiality from some of those meetings. Lauren has often shared others' personal information she says comes from HR or has used a close relationship with HR—true or otherwise—as a tool of manipulation. The lack of action to date gives the appearance that she has been protected, which is adding to their hesitation to share openly individually. The entirety of this experience has some anxious about confidentiality and about retaliation for coming forward, and distrustful of the efficacy of this process generally. They wonder: since staff have met with the Title IX office, does that protect us from retaliation for participating in any related investigations to their claims?

I am copying Seth Avakian here because I would like to request we start with a group meeting that includes him. Would it be possible for you both to connect with the RAS staff as a group first to share how they will be protected against retaliation and talk through next steps and

what they can expect as part of this process, including confidentiality? This would help establish a level of understanding and confidence in your process. Additionally, our group trusts him, and I think hearing from him as this gets handed off to HR would go a long way to easing some fears about individual meetings with HR. Then, as planned, meet with staff individually to hear their own specific experiences about the climate and culture in RAS.

Staff have been publicly belittled, targeted, and harassed. I sincerely believe this approach would create a path for staff to feel safe speaking openly and honestly about their individual experiences. I hope this is amenable to you, and that we can schedule as soon as possible to move forward.

Many thanks,
Roanne

**Roanne Bosch** (she/her/hers)
**Communications and Outreach Coordinator**
Harvard University I Faculty of Arts & Sciences – Research Administration Services
1414 Massachusetts Ave, 4th Floor, Cambridge, MA 02138
**E:** roannebosch@fas.harvard.edu**W:** https://research.fas.harvard.edu/

HARVARD
Faculty of Arts and Sciences
RESEARCH ADMINISTRATION SERVICES

---

**From:** Houston, Lance <lance_houston@fas.harvard.edu>
**Date:** Wednesday, June 7, 2023 at 10:45 AM
**To:**
**Cc:** Jadotte, Tiffany <tiffanyjadotte@fas.harvard.edu>, Smith, Etaine N. <etaine_smith@harvard.edu>
**Subject:** Staff Interviews

My name is Lance Houston, Program Officer for Professional Conduct with FAS HR.

FAS HR was recently contacted regarding complaints that were submitted about behaviors within your group that were described as inappropriate. As Scott and Claudine take your experience as an employee very seriously, they would like to understand what is happening at RAS, and you sharing your experience with us will be held in strict confidence. Thank you and we value your input.

Etaine Smith who is cc'd on this email as your department's Sr. HR Consultant and I will be contacting you individually to set up time to meet and to discuss with you further.

**Lance Houston, J.D., LL.M., S.J.D. Cand.**

**Program Officer for Professional Conduct**

**<u>FAS Human Resources</u>**

**Harvard University**

1414 Massachusetts Avenue (5th Floor)

Cambridge, MA 02138

Exhibit D

**Subject:** RE: Staff Interviews
**Date:** Wednesday, July 26, 2023 at 4:35:13 PM Eastern Daylight Time
**From:** Avakian, Seth
**To:** Bosch, Roanne

Dear Roanne,

You are most welcome.

I am thankful that you so thoughtfully wrote "The occasional check-in and quick email can mean so much."
It made me think of a student I've been working with for a few months and have been waiting on others to follow-up on addressing one of the students' concerns for longer than I anticipated.

I just reached out to them to see if they wanted to check-in, they were thankful to hear from me, and we are scheduled to talk tomorrow!

Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Tuesday, July 25, 2023 2:42 PM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** Re: Staff Interviews

Thanks so much, Seth. Your support means so much to me.

The hard thing—other than the obvious hard things!—has been the expectations that Lance has created around the timeline. He said after my interview with him that he expected to resolve this in a week (!) and then that we should hear something in the second week of July. He told others similar things in their interviews. Part of me knows it is never that quick, but when he says it might be the waiting is certainly harder.

I am also taking notes on how it feels to be on this side. The occasional check-in and quick email can mean so much.

Taking deep breaths over here and waiting as patiently as possible.

Again, thank you. I appreciate you so much!

All my best,
Roanne

---

**From:** Avakian, Seth <avakian@fas.harvard.edu>
**Date:** Tuesday, July 25, 2023 at 2:15 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>

**Subject:** RE: Staff Interviews

Hi Roanne,

I am sorry to hear about these new concerns that you and your colleagues share. I apologize for taking a few days to reply, I hope that you understand.

I thought I should take these concerns to Scott; I spoke with him earlier today. I hope it is at least somewhat reassuring to know that he and the team working on this in HR are taking this with the seriousness it warrants and need to ensure that this is a fair and comprehensive process.

In my role, I've not only supported others during investigations, I've participated in them myself. While it's rare, a few have taken close to a year to resolve and I know that when things take a long time, it can be disheartening. I am confident that's not the kind of timeline we're talking about here.

While I know all too well that it's not easy to hear "please be patient" – it's also the best advice I can give at this time.

If there are additional issues – new concerning behaviors, not receiving an answer on a time-sensitive issue, etc. – I suggest sharing them directly with Andrea.

I hope that things improve for you and your colleagues as quickly as possible!

Best,
Seth

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Friday, July 21, 2023 2:56 PM
**To:** Avakian, Seth <avakian@fas.harvard.edu>
**Subject:** FW: Staff Interviews

Hi Seth,

Erin Hale and I got this email from HR after reaching out for more information, and I am feeling especially defeated. Do you have any guidance for next steps RAS can take here? No one has communicated with us other than this, and we're not doing great. I so appreciate any insight you have!

All my best,
Roanne

---

**From:** Kelton-Harris, Andrea Lauren <alharris@fas.harvard.edu>
**Date:** Friday, July 21, 2023 at 2:01 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>, Houston, Lance <lance_houston@fas.harvard.edu>
**Subject:** RE: Staff Interviews

Hi Roanne,

We are sorry that staff continue to have concerns regarding this matter. The following is our responses to emails we have received this week from RAS staff:

1. As indicated in the communication sent on July 7, there is no information to share with you at this time. Please know that once there is information to share, we will contact all appropriate parties and share it.
2. If there are concerns regarding day-to-day operations such as subscriptions or requests that have been denied in the past and staff would like to revisit them, you should speak with Lauren Ferrell as she continues to be the leader of RAS.
3. We disagree with the perspective that RAS staff are not receiving any support from FAS HR or others. If there are particular types of support that you believe you are not receiving, please let us know and we will work to identify the best person/people to provide them to you.
4. It is not helpful to anyone or this process for staff to speculate or try to piece together information amongst yourselves regarding the investigation. This can lead to some of the anxieties that staff are experiencing. Further, any determinations that may be made in this way are assumptions at best. Please avoid engaging in this activity.
5. If there are emergency situations that arise you should work with Lauren. If you do not receive a response to emergencies that require immediate assistance, please reach out to Lance and I and we will make every effort to escalate the matter appropriately.
6. Please know that everyone involved in this process deserves to be treated respectfully and fairly and that includes not judging or making assumptions about things for which you have no direct knowledge or involvement. This is a challenging situation for all involved and we hope that everyone will exhibit the behaviors that they would like to see in others.

Please let us know if you have questions about any of the above. Thanks for your patience as we work through this situation.

Lance and Andrea

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Sent:** Friday, July 21, 2023 11:44 AM
**To:** Houston, Lance <lance_houston@fas.harvard.edu>
**Cc:** Kelton-Harris, Andrea Lauren <alharris@fas.harvard.edu>
**Subject:** Re: Staff Interviews

Hello Lance and Andrea,

RAS is concerned that we haven't had any communication or support on this matter. We are frustrated and struggling. Can you please provide us with an update?

Many thanks,
Roanne

---

**From:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Date:** Monday, July 10, 2023 at 9:14 AM
**To:** Houston, Lance <lance_houston@fas.harvard.edu>
**Cc:** Kelton-Harris, Andrea Lauren <alharris@fas.harvard.edu>
**Subject:** Re: Staff Interviews

Thanks so much for your message, Lance. We look forward to hearing more.

Many thanks,
Roanne

---

**From:** Houston, Lance <lance_houston@fas.harvard.edu>
**Date:** Friday, July 7, 2023 at 5:29 PM
**To:** Bosch, Roanne <roannebosch@fas.harvard.edu>
**Cc:** Kelton-Harris, Andrea Lauren <alharris@fas.harvard.edu>
**Subject:** Re: Staff Interviews

Hello Roanne,

As we continue to manage this matter I can tell you that there is no information to share at this time. We expect to be able to likely share more information sometime next week. Meanwhile, RAS is supported and if we can provide resources to the team at this time we are more than happy to do so. Please contact me or Andrea Kelton-Harris during this time with questions that may need an immediate response.

Andrea Kelton-Harris I Director for Diversity, Equity, Inclusion and Belonging - FASHR I
P: 617-496-3141 I1414 Massachusetts Avenue, 5th Floor, Cambridge, MA 02138

**Sincerely,**

**Lance Houston, J.D., LL.M., S.J.D. Cand.**
**Program Officer for Professional Conduct**
**FAS Human Resources**
**Harvard University**
**1414 Massachustetts Avenue (5th Floor)**
**Cambridge, MA. 02138**

On Jul 7, 2023, at 3:29 PM, Bosch, Roanne <roannebosch@fas.harvard.edu> wrote:

Hi Lance,

I hope this finds you well.

I wanted to be in touch with you because it has been an odd short week at RAS. Lauren has had an out-of-office email up all week, and abruptly canceled two one-on-ones we had scheduled, one Wednesday and one Thursday, and then also canceled our department check-in this morning. She told me she "was taking personal hours here and there" and told the team in her cancellation this morning that she is away for the afternoon; no one else has met with her or heard from her.

It has been weird enough that our team has been speculating that something happened with your investigation—we are anxious, and this unexpected absence is disrupting work. I just wanted to check in to ask how we would hear if anything has happened or is going to. Do you know if there is a timeline for any next steps, and who we might expect to hear from?

I understand that there is much you can't share with us, but wanted to let you know that we would appreciate anything at all that you could share, even about timing. We are all feeling all the feelings over here!

Many, many thanks!
Roanne

**Roanne Bosch** (she/her/hers)
**Communications and Outreach Coordinator**
Harvard University | Faculty of Arts & Sciences – Research Administration Services
1414 Massachusetts Ave, 4th Floor, Cambridge, MA 02138
**E:** roannebosch@fas.harvard.edu|**W:** https://research.fas.harvard.edu/

<image001.png>

Exhibit E

**From:** Ferreli, Lauren
**To:** Mejia, Genesis
**Cc:** Smith, Etaine N.; Leaves Consultant
**Subject:** Re: Genesis + Lauren: wk 4 check-in and feedback
**Date:** Wednesday, August 23, 2023 9:53:36 AM
**Attachments:** image001.png
Mejia RAS Return To Work Plan Updated072523.pdf

---

Hi Genesis,

I am happy to reassure you, you are not under any discipline plan or being disciplined for performance. On the contrary, I am ensuring we have active, structured engagement and you are informed, supported and given the opportunity to succeed.

I recognize that while you were under the weather and needed calendar adjustments, things were moved around to both accommodate your needs, and my own future calendaring, which perhaps is what led to the below assumptions. I encourage you to raise concerns when they are fresh, so they can be addressed in real time. I would hate to think this was what you thought was the case all weekend, particularly when you aren't or weren't feeling your best, and would have been happy to clear that up in our Friday call.

Your situation is unique in that you were just a few months into your role when you went on leave, and while on leave a lot changed in those activities RAS led in the compliance space; activities you were just being trained on and had not had the opportunity to fully engulf in before they were removed from our portfolio. Now that you have returned, you are being introduced to an entirely different set of compliance needs.

We began with the general 4 week plan, and as we have made our way through, and as you are aware, we have encountered system barriers and information gaps due to disjointed reports, etc., that have slowed our ability to move through even the first of the new tasks (related to NSF) in your 4 week plan, let alone other tasks that will be assigned. This does not mean however, that after the first 4 weeks, we should not meet again or see how things are working. Assessments will be regular. As you know, you are the first to have this return model, so regular assessments are particularly important so that we can modify the general plan for future use as appropriate.

As it relates to your particular functional area of compliance, flexibility, agility and patience will always be needed and expected; compliance needs change rapidly, and we are asking questions that the various offices and systems have not yet been asked, so we should expect we will need to be agile and flexible which will require regular engagement.

Checking in regularly and having intentional, timely engagement, is how we best ensure we plan and support the compliance functions we are now intending to oversee, and how we best set you up for success, particularly as we are reimagining research administration support. Our first focus on reimagining is on the people, and ensuring the individuals in RAS are clear on their duties, and have the opportunity to excel.

For Etaine and Leaves benefit, attached is the general 4 week plan that Genesis was provided. We

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

have been building from this PDF in much more detail, and will continue to do so. This is something that is new to RAS, and will be incorporated into all those who return from extended leaves. A similar one for on and off boarding is in the works as well.

Genesis, I look forward to meeting with you later today, and scheduling additional touchpoint meetings so we can continue the NSF and other projects, and identify where adjustments are necessary.

All the best,
Lauren

**Lauren Ferrell** *(she/her/hers)*
**Associate Dean for Research Administration Services**
Harvard University | Faculty of Arts & Sciences - Research Administration Services
**O:** 617-495-4083 | **E:** lauren_ferrell@harvard.edu | **W:** https://research.fas.harvard.edu

*For all scheduling inquiries, please reach out to me directly.*

*Note: This conversation is restricted, so you might not be able to cut or copy from it. See the information above the To line for more details. Also, while the conversation is restricted, the conversation owner can send the message to other people.*

**From:** Mejia, Genesis <gmejia@fas.harvard.edu>
**Date:** Monday, August 21, 2023 at 11:29 AM
**To:** Ferrell, Lauren <lauren_ferrell@harvard.edu>
**Cc:** Smith, Etaine N. <etaine_smith@harvard.edu>, Leaves Consultant <leaves@fas.harvard.edu>
**Subject:** RE: Genesis + Lauren: wk 4 check-in and feedback

Hi Lauren,

Thank you for the meeting invites for 30, 60 and 90 day check in.

As a follow-up on your email message below, can you please clarify the purpose of the proposed check- in(s) as they relate to your specified timelines of *"**based upon the first 4 weeks ...and 60 and 90 mark**."* It would be helpful to understand the purpose of these check-ins , i.e., if they are a part of a disciplinary process and, also how these meetings will relate to my annual performance review.

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

I am also asking, because as you know I have been on a certified medical leave and returned to work on July 26, 2023. As a result, your requested meeting timelines does not seem like a typical protocol for returning to the office after medical leave. Rather, the cadence of your referenced meeting timelines, aligns with what I'd expect during the boarding period (Probationary Period or O & R), which in my case did not happen, or for someone who is demonstrating poor performance.

As I return to the workplace, my emphasis will be on getting re-acclimated to the work and performing to my full potential. However please be aware that like any employee, I may experience situations that are outside of my immediate control and so will need to utilize the resources and benefits offered to all employees by the University. I look forward to your response and clarifications to the contents of your messages below.

Thank you,
Genesis

-----Original Appointment-----
**From:** Ferrell, Lauren <lauren_ferrell@harvard.edu>
**Sent:** Thursday, August 17, 2023 12:28 PM
**To:** Mejia, Genesis
**Subject:** Genesis + Lauren: wk 4 check-in and feedback
**When:** Wednesday, August 23, 2023 12:00 PM-1:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** https://harvard.zoom.us/j/6174954083?pwd=WlVZTTR4UHMzYTZDd1AyUGE5TGdMUT09&from=addon

Agenda & Pre-Work for both of us:

- PRE-WORK: Review the return to work plan & identify any areas that are not yet addressed, or questions (Each of us should review the plan and come with identified areas and/or questions we may have)
- Feedback from first 4 weeks (PRE-WORK: Both of us should come prepared to discuss feedback we have, if any)
  - From Lauren
  - From Genesis
- Identify priorities for next 4 weeks (I will come with a list of priorities for the next 4 weeks, including suggested trainings. Items that can, will have due dates. I will also be suggesting some foundational training opportunities based on observations to date. If you have identified any areas you think are appropriate to train on at this time, please bring that information for this discussion)
  - Projects
  - Recurring tasks (if any)
  - Trainings

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

- Assign deadlines for these priorities

—-Additional similar meetings will be scheduled for the 60th day since your return, and the 90th day since your return.-

Lauren Ferrell is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

Meeting URL: https://harvard.zoom.us/j/6174954083?pwd=WlVZTTR4UHMzYTZDd1AyUGE5TGdMUT09&from=addon

**Join by telephone** (use any number to dial in)

Dial:
+1 305 224 1968
+1 309 205 3325
+1 312 626 6799
+1 646 931 3860
+1 929 436 2866
+1 301 715 8592
+1 719 359 4580
+1 253 205 0468
+1 253 215 8782
+1 346 248 7799
+1 360 209 5623
+1 386 347 5053
+1 507 473 4847
+1 564 217 2000
+1 669 444 9171
+1 669 900 6833
+1 689 278 1000

Meeting ID: 617 495 4083

International numbers

One tap mobile: +13052241968,,6174954083# US

**Join by SIP conference room system**

Meeting ID: 617 495 4083

Password: 02138

SIP: 6174954083.02138@zoomcrc.com

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

Exhibit F

30 day check-in

~~[illegible]~~ 1:1 Lauren

feedback and suggestions 4wk check-in

- be mindful for ask for the upcoming months
  - prioritize being punctual
  - focus in meetings.
- Re adjustment now that school is starting
- managers struggle with remote work
  - based on last 4 weeks wants me to prioritize ~~punctual~~, able to focus
- dedicate yourself for actual one offs to be one-offs, not for things to become normal
- fully engaged when remote
- a lot going on, wants me to be intentional moving forward, that maybe this was just my start up time
- plan accordingly, hybrid experience we need to be focused,
- people using work time to parent, doesn't want me to fall into that being a thing
- prioritize Child Care
- ~~[illegible]~~ it's a common thing [keep in mind]
- " ~~[illegible]~~ "Dont let it be a norm"
- "Harvard is not paying us to raise our kids"
- "you need to figure it out

- "I dont make assumptions"
- ask of anyone that works with, under or around for trust.
- messages she is seeing (emails) do not align with our conversations
- There is a tone to them
- "dont understand where that energy is coming from.
- She is being extremely gracious
- Be more conscious, does not enter our conversations with negativety and it should be mutual
- consistent behavior
- making negative assumptions
- Take out that negativity
- "you have been off every time"
- kept interrupting me and not letting me speak.
- "I dont know what your saying"
- you have a lot going on "5 or 6 kids' not feeling good."
- "get what your saying but that not what was

(LIE!) In your message, you helped me with the email"
- "I dont know if that was a day you was not feeling well"
- you shouldnt assume"
- "I feel like what ever is happening at home, I think its personal"

- "you changed your mind, or deleted the conversation we had"
- "It is okay to change your mind!"
- "I need you to consider that in your emails, this isn't the only time."
- Need me to give a pause and take a break and think about how I am showing up, how she is and move forward thinking about that.

Exhibit G

**From:** Smith, Etaine N.
**To:** Mejia, Genesis
**Subject:** FW: Called you on Teams
**Date:** Friday, September 15, 2023 9:16:00 PM
**Attachments:** image002.jpg
image003.jpg
Mejia 082323 CheckIn Mtg Notes.docx
Re Genesis + Lauren wk 4 check-in and feedback.msg

---

Hi Genesia: Thanks for following up with me today and for sharing your concerns around working with Lauren/RAS.

As explained, I am working with my office to address the concerns outlined in your email below, however I have not shared the email contents with Lauren. To fully address the concerns, I will need to share these with her, and will let you know ahead of time when I do. However, since you report to Lauren it is necessary that you meet with her to discuss your work/provide progress reports and as needed to receive guidance/feedback on the work. You have indicated that you do not feel comfortable meeting alone with Lauren and so would like me to be present. As the HR Consultant assigned to your group, I can attend the meeting/s . You also have the right to have another HR Consultant, or someone else attend the meeting. Should you select someone who is not a HR Consultant, based upon the agenda you may want to ensure that the topics that will be discussed will be confidentially managed/protected..

On Monday 9/18 I am available to join your 3:00pm zoom, however on Tuesday 9/19 at 1:00 pm I am booked at that time.

Please let me know what you decide.

Etaine

**From:** Smith, Etaine N.
**Sent:** Tuesday, September 12, 2023 6:00 PM
**To:** Mejia, Genesis <gmejia@fas.harvard.edu>
**Subject:** FW: Called you on Teams

Hi Genesis: Thanks for reaching out to me. I will connect with you tomorrow during business hours.

Take care,

Etaine

**From:** Mejia, Genesis <gmejia@fas.harvard.edu>
**Sent:** Tuesday, September 12, 2023 5:35 PM
**To:** Smith, Etaine N. <etaine_smith@harvard.edu>

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

**Subject:** RE: Called you on Teams

Hi Etaine,

Thank you for reaching out to me, I have many concerns around my role and future here at Harvard.

I took the time to digest and reflect on the number of situations that have arrived with addition to the new approaches Lauren Ferrell has implemented since my return from leave on 7/26/2023 to managing my workflow. The return to work includes: 30, 60 and 90 day check ins (which include feedback and suggestions) in which the requested meeting timelines does not seem like a typical protocol for returning to the office after medical leave. In addition, no other staff in RAS have been prescribed or subject to these protocols returning from leave. Rather, the cadence of her referenced meeting timelines, aligns with what I'd expect during the boarding period (Probationary Period or O & R), which in my case did not happen, or for someone who is demonstrating poor performance. I asked her for clarity and purpose of these meetings on 8/21 she did not respond, she respond on 8/23 right before our check in meeting it appeared she did not take my email very well, as quoted from that email, "I recognize that while you were under the weather and needed calendar adjustments, things were moved around to both accommodate your needs, and my own future calendaring, which perhaps is what led to the below assumptions".
Furthermore, during our discussion of these changes on the 30 day check in, on 8/23 she mentioned that she views this as a collaborative approach. While I appreciate the intention behind this, I felt that the decision-making process was somewhat one-sided, and I did not have the opportunity to actively participate in it. My hope is that in the future, I can be more actively involved in the decision-making processes, which will not only allow me to provide timely input but also enable me to better align with the standards and deadlines that have been imposed. Working collaboratively on these changes will not only help me meet the expectations set forth but also provide me with an opportunity to contribute to the success of our team and my personal growth here at Harvard. I believe that a more inclusive and collaborative approach will lead to more effective outcomes for all parties involved. I would greatly appreciate the opportunity to discuss this further and explore how we (Lauren and i) can ensure a more collaborative decision-making process moving forward. Your insights and guidance are invaluable, and I am committed to working together to achieve my departments shared goals.
However, I must admit that I am concerned about the significant discrepancies between the tone and content of my meeting discussions and the documentation Lauren has provided. I would also like to express my concerns for being treated differently than other staff returning from leave. I do feel this is discriminatory.
In all my years at Harvard, I have never experienced a situation where a supervisor's documented account of a conversation diverges so significantly from what was discussed during the meeting. This discrepancy is deeply unsettling to me.
During my meeting with Lauren, we discussed various aspects of my work, and how she conveyed her commitment to fostering a collaborative work environment. However, the documented paper

trail appears to omit specific portions of our discussion while amplifying others. This misalignment between our conversation and the documented version not only contradicts the collaborative spirit we aim to create but also does not accurately reflect my work contributions.

**My notes on feedback I received during my 8/23 meeting that do not align with the tone nor tenor of the meeting includes :**

- I don't make assumptions neither should you
- "messages she is seeing (emails) do not align with our conversations" (this is in reference to email correspondence including HR)
- "there is a tone to them, I don't understand where that energy is coming from"
- "I am being extremely gracious"
- Wants me to be more conscious, she does not enter our conversations with negativity and it should be mutual
- "this is consistent behavior"
- "you are making negative assumptions"
- "take out that negativity, you have been off every time"
  [during all of this talk, she did not let me get a word out or let me speak]

- "I don't know what you are saying"
- "you have a lot going on, 5 or 6 kids and not feeling well" (I have 3 kids all of whom are in school)
- "I don't know if that was a day you were not feeling well, you shouldn't assume, I feel like whatever is happening at home, I think its personal" (this is still in reference to the email I sent asking for clarity and purpose of the 30,60,90 day check ins)
- "be mindful for ask for the upcoming months: prioritize being punctual and focus in meetings." (in reference to my daughter saying hi)
- "need to readjust now that school is starting"
- "dedicate yourself for actual one-offs to be one-offs, not for things to become normal" (Never asked for any one-offs, not sure what she was referencing)
- "fully engaged when remote, a lot going on, wants me to be intentional moving forward, that maybe this was just my start up time"
- "plan accordingly, with hybrid experience we need to be focused"
- "people are using worktime to parent, does not want me to fall into that being a thing"
- "prioritize child care" (Upon my return to work from my leave, I shared that my daughter is/was in camp 4 days per week and would be home with me on Mondays, however she would not be disruptive. Based upon previous interactions with Lauren, the message conveyed by her to me and other members of the RAS staff, is that our office is "kid friendly", where kids could say hi on zoom or come into the office space and be present. By highlighting this issue in her written summary of our conversation, she has conveyed that I am not able to appropriately handle and balance my parenting and work responsibilities. It leads to believe that I have no childcare, and that I am unable to work at all from home. In fact, that isn't the case. To be sure that I meet my work responsibilities I have adjusted my private life and will continue to make these adjustments to meet my work responsibilities as I have done so over the years)
- "don't let this be a norm"
- "Harvard is not paying us to raise our kids, you need to figure it out"

- " you changed your mind or deleted the conversation we had"
- "it is okay to change your mind" (referencing again the email I sent 8/21 including HR)
- "I need you to consider that in your emails, this isn't the only time" (referencing again the email I sent 8/21 including HR)
- "need me to give a pause and take a break and think about how I am showing up, how she is and move forward thinking about that"

This continuous behavior is persistent and severe in such a way that it has created a hostile, toxic and unwelcoming learning and working environment and has made it very difficult or nearly impossible for me to carry out my duties successfully at the university. This it is causing delays in completing projects, it is causing unbearable level of stress, i have been seeing a therapist since May, because it's just been too much to bear over the months. The level of incivility, intimidation and bullying that Lauren exhibits is shocking to experience at Harvard. I found the courage to speak up in good faith and seek proper advice and support. It feels as though I am drowning in isolation. I feel as though I am being bullied into leaving. It is my understanding that after I came forward to the Title IX office in May to discuss the problems happening in RAS I was protected from any sort of retaliation. The retaliation policy states "The University expressly forbids anyone to take any form of retaliatory action against any member of the Harvard community".

- making unwarranted critical comments lacking in good reason about me to others in the department, constantly displays behavior of poor professional judgement that endangers my health and wellbeing, her behavior and this experience interferes with my ability to perform my duties at the university.
- Assigning more onerous work (NSF Project) ;
- started a new process with me that is like a return to work process th (check ins 30,60,90 days)
- exclusion from work-related opportunities, such as conferences- she said because i was on leave for so long it may not count towards my 1yr in my current position (1 yr sept 19th),
- during an all team meeting, with purpose of providing updates, she purposely ignored me, said hi to everyone but me, everyone spoke but me, she gave NSF work updates.
- 9/7, we had a meeting and she told me to recreate the entire NSF plan from scratch, a plan that already exist with no direction or assistance
- 9/7 I had to leave early to pick up my youngest from school and she went into my office to leave me a note on my keys that's read "come see me before you leave", when I went she said she wanted to discuss hybrid/remote work with me as this is something she is working on with Scott Jordan. That we don't realize that working remotely is a gift and can be taken away at any time.

**Current work project: NSF Safe and inclusive working environment**

This seems like onerous work, It is confusing, as OVPRS message includes much of what Lauren is asking me to do. Do the entire "NSF Project" she references seems largely duplicative. In the 1/27/23 message to faculty from the VPR, they reference a template plan that they worked with the schools to develop (a link to the template is in the ovpr site) that should be used and outlines responsibilities within that message-was she not a part of this process? I don't think a checklist to help PIs determine when a plan is required is necessary as it's pretty straightforward & already included on the ovpr site, although I don't believe they included a reference to the specific pilot solicitations for which the plans are required to be submitted to NSF, although those are referenced

in the actual NSF policy to which the site links.

In addition, I would also like to bring up the NSF workflow concerns that Lauren implemented. The proposed timeline is very tight, during which the focus is for me to produce a lot of content in a sequential order, one item building on the last. However, there's nothing in the timeline that bakes in time for Laurens review and reflection. I am bringing this to your attention , because as noted in other correspondences, this NSF project is fluid and evolving. As a result, I think this is the kind of project where her early feedback is imperative, specifically because as we work through this project, and we can see the full situation, she may therefore choose to pivot. However as shared and discussed Lauren's role comes later when she disseminate the materials or create a SharePoint. As a result , I cannot see where when/where she envision the time to review, digest and provide feedback, for example, in the form of input on next deliverable. I am highlighting this, as to be successful in my role I need to be provided with the proper tools and support. It appears she's asking me to do work that's already been done.... months ago...
I am very concerned and request the assistance of HR in resolving this matter. I have 10 years at Harvard and 9 of which i have been happily employed. This experience has opened my eyes tremendously and i want to continue to support the work because i love working here and being part of this community but at what point is this community going to show me the same. This is a problem that predated me, and she brought me onboard and made me apply to the position (I was happy where I was). She preyed on me knowing she would treat me this way. So I respectfully ask: what further actions should i take? How can the university protect me from this behavior? What are my options? I would like to stay in the school/ department but i cannot continue to endure this behavior and just sit and wait till something is resolved. Please, help me.
Thank you for your attention to this matter, and I look forward to hearing from you soon.

Sincerely,
Genesis

**Genesis Mejia** (she/her/hers)
Research Compliance Officer
**Harvard University | FAS Research Administration Services**
1414 Massachusetts Ave. | 4th Floor, Room 480 | Cambridge, MA 02138
Office: 617-495-6437 | Gmejia@fas.harvard.edu

**From:** Smith, Etaine N. <etaine_smith@harvard.edu>
**Sent:** Tuesday, September 12, 2023 12:52 PM
**To:** Mejia, Genesis <gmejia@fas.harvard.edu>
**Subject:** Called you on Teams
**Importance:** High

Hi Genesis: Just called you a few minutes ago on teams. Can you please call me at 617 251 5661 to discuss the concerns raised with Lance Houston.

Thanks,

Etaine Smith | Senior Human Resources Consultant | P: 617-496-9380 | 1414 Massachusetts Avenue, Cambridge, MA 02138 |

*This message may contain confidential information. If you received this message in error or were not the addressee, please advise me by emailing a reply and then kindly delete the message.*

Please note: You now need your HUID in order to have elevator access to all FAS Administrative Offices located in 1414 Massachusetts Ave.

Exhibit H

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

MCAD DOCKET NUMBER: 23BEM02521 EEOC/HUD CHARGE NUMBER: 16C-2023-02405
[illegible] DATE: 09/19/23 VIOLATION DATE: 09/15/23

[illegible] Person or Organization:
[illegible]
[illegible] St.
[illegible], MA 02343
Primary Phone: (857)544-5041

Named is the employer, labor organization, employment agency, state/local government agency, or other entity who discriminated against me:
Harvard University
Office of the General Counsel
Richard A. Smith & Susan F. Smith Campus Center
1350 Massachusetts Avenue, Suite #980
Cambridge, MA 02138
Primary Phone: (617)495-4585

Lauren Farrell
c/o Harvard University
Office of the General Counsel
Richard A. Smith & Susan F. Smith Campus Center
1350 Massachusetts Avenue, Suite #980
Cambridge, MA 02138
Primary Phone: (617)495-4585
[illegible]
No. of Employees: 15+
[illegible]
Work Location: Cambridge, MA

Cause of Discrimination based on:
Race, [illegible], Retaliation

[illegible]
[illegible], the Complainant believe that I was discriminated against by Harvard University, Lauren Farrell, on the [illegible] and retaliation. This is in violation of M.G.L. c. 151B Section 4 Paragraph 1, 4 and Title VII.

[illegible] identify my race as Hispanic.
In 2019, Respondent Harvard University hired me in the School of Public Health. On September 19, 2022, I [illegible] to the Faculty of Arts and Sciences as a Research Compliance Officer. My supervisor is Respondent Lauren Farrell (non-Hispanic). I have always performed my duties satisfactorily.
[illegible] around November 2022, Respondent Farrell started to talk down to me in meetings and make comments about my attitude. During a meeting about a pilot software with Respondent Farrell and co-worker [illegible] I tried to explain issues I had already troubleshot when Respondent Farrell tried to have me do them [illegible] despite the fact that I had already reported these troubleshooting methods. When Ms. [illegible] Respondent Farrell told me "you need to catch yourself," and to "lower your voice." I was [illegible] aggressive manner.
On [illegible] I went on medical leave. During my leave, Respondent Farrell contacted me and [illegible] that I needed to "learn responsibility," and [illegible] she would fire me for job abandonment. Ms. [illegible]
[illegible] Respondent's Title IX office to file a complaint [illegible] and I filed a complaint stating [illegible]

[illegible] engaging in discrimination and bullying. Respondent's Human Resources Department took over the complaint [illegible] assigned Lance Houston as the investigator.

[illegible] On July 26, 2023, I returned to work on a full time basis. Upon my return, Respondent Farrell instituted a new 30/60/90 day check in for employees returning from leave. I was the only employee who was required to do this check in, despite three other co-workers (Ms. Beach, Heather LNU, and Adrianna LNU, all White) returning from leave around the same time as me. I believe I am the only one to receive these check ins due to my complaint of discrimination I filed in May 2023.

7. On August 23, 2023, I had my 30 day meeting with Respondent Farrell, who made comments about my attitude and negativity, stating I was "making negative assumptions" to Ms. Farrell's treatment of me. Respondent Farrell also said "you have a lot going on, five or six kids and not feeling well, I feel like whatever is happening at home is personal." Respondent Farrell is aware I only have three kids. Upon information and belief, I am aware of four other employees, Noel Rai (Asian), Monica Patel (Indian), Niala McGowan (White) and Jennifer Corby (White), who have children but are not subjected to comments about how they parent their children.

[illegible] September 11, 2023, I tried to follow up with Investigator Houston to discuss the retaliation for my previous [illegible] Houston said he would follow up to provide proper support. However, later on September [illegible] Investigator Houston is no longer employed by Respondent. [illegible] me with any update on this matter.

[illegible] Beverly and Lauren Farrell, are discriminating against me [illegible] against me for filing a complaint of discrimination by subjecting me to a hostile work [illegible]

[illegible] of perjury, that I have read this complaint and the allegations contained herein [illegible]

(Signature of Complainant)

Exhibit I

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

**From:** Ferrell, Lauren
**To:** Mejia, Genesis; Smith, Etaine N.
**Subject:** Re: GM Resignation letter 10/2/23
**Date:** Wednesday, October 11, 2023 12:32:29 PM

---

Hi Genesis,

My sincere apologies for not seeing this message sooner. It unfortunately was buried in the proposal messages related to the ARPA-H proposal I was supporting.

Thank you for the update.

Roanne will be in touch regarding an announcement of departure to the staff. Admin ops will be in touch to arrange system updates and I will work together to ensure we will arrange the return of the FAS equipment, peripherals, keys, etc., on or before October 16th.

We wish you all the best for any and all of your future endeavors, and are thankful for your contributions.

Sincerely,
Lauren

**Lauren Ferrell**
Associate Dean for Research Administration Services
**Harvard University | FAS Research Administration Services**
lauren_ferrell@harvard.edu
+1 617 495 4083

---

**From:** Mejia, Genesis <gmejia@fas.harvard.edu>
**Sent:** Monday, October 2, 2023 8:10 PM
**To:** Ferrell, Lauren <lauren_ferrell@harvard.edu>; Smith, Etaine N. <etaine_smith@harvard.edu>
**Subject:** GM Resignation letter 10/2/23

Dear Lauren and HR,

I hope this message finds you well.

After much reflection and consideration, I have decided to resign from my position as Research Compliance officer at Harvard University effective 2-weeks from today, October 16, 2023.

I joined FAS from HSPH, The Harvard TH Chan School of public health where I was a highly regarded staff and contributed 9 years to such an amazing department and team. I am honestly grateful for the opportunity and many accomplishments over the years I have worked at Harvard. I hope that the school will take this opportunity to reflect on its practices and make meaningful strides towards a more inclusive, non-hostile, and equitable workplace.

Please consider this email as my formal resignation, and I am willing to work with you during the notice period to ensure a smooth transition.

Sincerely,

Genesis Mejia

Date Filed 9/1/2026 5:15 PM
Superior Court - Middlesex
Docket Number

(2) 26-2348

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>New Filing | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

PLAINTIFF(S): Genesis Mejia

ADDRESS: 53 Rockwood Street

Holbrook, MA 02343

COUNTY: Middlesex

DEFENDANT(S): President and Fellows of Harvard College and Lauren Ferrell

ADDRESS: 1341 Massachusetts Avenue, Cambridge, MA 02138 and 2355 Westwood Blvd, Ste 607, Los Angeles, CA 90064

ATTORNEY: Leah S. Duffield

ADDRESS: Hackett Feinberg, PC

155 Federal Street, Floor 9, Boston, MA 02110

BBO: 707125

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☑ YES ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A? ☐ YES ☑ NO

Is this a class action under Mass. R. Civ. P. 23? ☐ YES ☑ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

(attach additional sheets as necessary)

A. Documented medical expenses to date:

1. Total hospital expenses .......... $
2. Total doctor expenses .......... $
3. Total chiropractic expenses .......... $
4. Total physical therapy expenses .......... $
5. Total other expenses (describe below) .......... $

Subtotal (A): $

9/1/26 **RECEIVED**

B. Documented lost wages and compensation to date .......... $ >50,000
C. Documented property damages to date .......... $
D. Reasonably anticipated future medical and hospital expenses .......... $
E. Reasonably anticipated lost wages .......... $
F. Other documented items of damages (describe below) .......... $

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Gender discrimination in violation of M.G.L. c. 1518, § 4(1),
and retaliation in violation of M.G.L. c. 1518, §§ 4(4), and 4(4A).

TOTAL (A-F):$ >50,000

**CONTRACT CLAIMS**

(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

**Signature of Attorney/ Unrepresented Plaintiff: X** /s/ Leah S. Duffield **Date:** 9.1.26

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** /s/ Leah S. Duffield **Date:** 9.1.26

# CIVIL ACTION COVER SHEET INSTRUCTIONS
# SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c.231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party †**

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential (X)
S02 Summary Process - Commerical/ Non-residential (F)

**RP Real Property**

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10 §28 (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E (X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency, G.L. c. 30A (X)
E03 Certiorari Action, G.L. c.249 §4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G. L. c. 93 §9 (A)
E07 Mass Antitrust Act, G. L. c. 93 §8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149 §§29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12 §11H (A)
E24 Appeal from District Court Commitment, G.L. c.123 §9(b) (X)
E25 Pleural Registry (Asbestos cases)
E95 Forfeiture, G.L. c.94C §47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B (F)
Z02 Appeal Bond Denial (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A §12 (X)
E14 SDP Petition, G.L. c. 123A §9(b) (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c.6 §178M (X)
E27 Minor Seeking Consent, G.L. c.112 §12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☐ YES ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**
**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.**